Case 1:07-cv-06466   Document 28-6   Filed 05/15/2008   Page 1 of 18
Case 1:07-cv-06466   Document 15-6   Filed 01/31/2008   Page 1 of 18
Case 1:07-cv-06466   Document 13-7   Filed 01/03/2008   Page 1 of 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREENWICH INVESTORS XXIV, LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 07 C 6466 |
| WALTER JOHNSON II, ANN L. DOMAKAITIS, A AND W, INC. and ENTERPRISE INDUSTRIES, INC., | ) ) ) ) ) |
| Defendants. | ) ) |

**NOTICE OF FILING**

To:   Clerk of the Court

PLEASE TAKE NOTICE that on January 3, 2008, Greenwich Investors XXIV, LLC filed with the Clerk of the Court, its Amended Complaint, a copy of which is attached hereto.

Greenwich Investors XXIV, LLC

By: s:/Jason D. Altman
One of its attorneys

Jason D. Altman
Kluever & Platt, LLC
65 E. Wacker Pl., Suite 2300
Chicago, IL 60601
(312) 236-0077
Attny. No.: 6224378


EXHIBIT E

Case 1:07-cv-06466   Document 28-6   Filed 05/15/2008   Page 2 of 18
Case 1:07-cv-06466   Document 15-6   Filed 01/31/2008   Page 2 of 18
Case 1:07-cv-06466   Document 13   Filed 01/03/2008   Page 1 of 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREENWICH INVESTORS XXIV, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 07 C 6466 |
| | ) |
| WALTER JOHNSON II, ANN L. DOMIKAITIS, | ) |
| A AND W, INC. and | ) |
| ENTERPRISE INDUSTRIES, INC., | ) |
| | ) |
| Defendants. | ) |

## AMENDED COMPLAINT

Plaintiff, Greenwich Investors XXIV, LLC, by its attorneys, Jason D. Altman and David C. Kluever of Kluever & Platt, LLC, and for its amended complaint against the defendants, Walter Johnson II, Ann L. Domikaitis, A and W, Inc. and Enterprise Industries, Inc., states as follows:

## PARTIES

1. Plaintiff Greenwich Investors XXIV, LLC ("Greenwich") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of California. Greenwich's sole member is WMD Capital Partners Fund, LLC ("WMD"). WMD is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of California. WMD's members are Steve Gumins, a citizen of the State of California, Dennis E. Carlton, a citizen of the State of California, Michael D. Thomas, a citizen of the State of California, and WM Daugherty & Company, LLC ("WM"), a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of California. WM's members are

Case 1:07-cv-06466   Document 28-6   Filed 05/15/2008   Page 3 of 18
Case 1:07-cv-06466   Document 15-6   Filed 01/31/2008   Page 3 of 18
Case 1:07-cv-06466   Document 13   Filed 01/03/2008   Page 2 of 6

William M. Daugherty, a citizen of the State of California and Dennis E. Carlton, a citizen of the State of California.

2. Defendant Walter Johnson II ("Johnson") is a citizen of the State of Illinois, residing in Chicago, Cook County, Illinois.

3. Defendant Ann L. Domikaitis ("Domikaitis") is a citizen of the State of Illinois, residing in Palos Park, Cook County, Illinois.

4. Defendant A and W, Inc. ("AW") is a corporation organized under the laws of the State of Illinois, with its principal place of business in Frankfort, Will County, Illinois.

5. Defendant Enterprise Industries, Inc. ("Enterprise") is a corporation organized under the laws of the State of Illinois, with its principal place of business in Frankfort, Will County, Illinois.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a). The matter in controversy is between citizens of different states, and the amount in controversy exceeds the sum and value of $75,000.00, exclusive of interest and costs.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) in that the defendants reside in this judicial district.

## COUNT I – BREACH OF PROMISSORY NOTE – JOHNSON AND DOMIKAITIS

8. On or about March 17, 2003 Johnson and Domikaitis obtained a loan from The Northern Trust Company ("The Northern") in the original principal amount of $340,670.08. Such indebtedness is evidenced by a Promissory Note attached and incorporated herein as Exhibit A (the "Note").

Case 1:07-cv-06466   Document 28-6   Filed 05/15/2008   Page 4 of 18
Case 1:07-cv-06466   Document 15-6   Filed 01/31/2008   Page 4 of 18
Case 1:07-cv-06466   Document 13   Filed 01/03/2008   Page 3 of 6

9. The Original Note provides the Borrowers were jointly and severally liable to repay the indebtedness evidenced by the Note.

10. The Note matured and came due by its terms on April 30, 2003.

11. As the indebtedness evidenced by the Note had not been repaid following maturity on and after April 30, 2003, and despite demands for payment by The Northern, The Northern entered into a Forbearance Agreement dated December 15, 2003. The Forbearance Agreement provided for the payment of certain installments on account of the indebtedness evidenced by the Note with the outstanding balance including all principal and interest to be paid on October 31, 2004. The Forbearance Agreement is attached and incorporated herein as Exhibit B.

12. The Borrowers failed to pay the full amount of the loan indebtedness upon maturity of the loan on October 31, 2004, and accordingly, the Borrowers have breached the terms and conditions of the Note and the Forbearance Agreement.

13. The Northern transferred, assigned and conveyed the Note to Greenwich by an Allonge to the Note dated May 2, 2007, a copy of which is attached and incorporated herein as Exhibit C.

14. After giving Borrowers credit for all payments remitted on the loan, Borrowers owe $114,482.47 under the terms of the Note, plus interest which continues to accrue at the default rate of 6.25% per annum at the *per diem* rate of $19.8754288 per day. As of November 9, 2007, the Borrowers owe accrued unpaid interest of $15,379.36 for a total amount due of $129,861.83, plus additional interest accruing from November 9, 2007 through judgment.

15. Greenwich is entitled to its attorney's fees and court costs from the Borrowers in accordance with the terms of the Note.

Case 1:07-cv-06466    Document 28-6    Filed 05/15/2008    Page 5 of 18
Case 1:07-cv-06466    Document 15-6    Filed 01/31/2008    Page 5 of 18
Case 1:07-cv-06466    Document 13    Filed 01/03/2008    Page 4 of 6

16. Greenwich has performed the terms and conditions of the Note.

WHEREFORE, Plaintiff, Greenwich Investors XXIV, LLC moves that this Court enter judgment in its favor and against the defendants Walter Johnson II and Ann L. Domikaitis jointly and severally in the amount of $129,861.83 plus additional interest accruing from and after November 9, 2007 through the date of judgment, plus Greenwich Investors XXIV, LLC's attorney's fees and court costs in this action.

### COUNT II – BREACH OF GUARANTY – AW

17-25  Greenwich restates paragraphs 8 through 16 of Count I as paragraphs 17 through 25 of Count II, as though fully set forth herein.

26. Contemporaneously with the making of the Note and as a material inducement to The Northern to extend credit and make the subject loan to Borrowers, AW as guarantor, executed a Commercial Guaranty (the "AW Guaranty") in favor of the Northern dated March 17, 2003 personally guaranteeing repayment of the indebtedness evidenced by the Note. A copy of the AW Guaranty is attached and incorporated herein as Exhibit D.

27. AW's obligations as guarantor run to and for the benefit of Greenwich as the AW Guaranty provides that it inures to the benefit of successors and assigns of The Northern, and includes all indebtedness of the Borrowers under the Note "together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note."

28. On May 2, 2007, The Northern assigned the AW Guaranty to Greenwich.

29. Despite repeated demands, AW has refused and otherwise failed to pay the amounts due Greenwich as alleged above, and has thereby breached its obligations under the AW Guaranty.

Case 1:07-cv-06466   Document 28-6   Filed 05/15/2008   Page 6 of 18
Case 1:07-cv-06466   Document 15-6   Filed 01/31/2008   Page 6 of 18
Case 1:07-cv-06466   Document 13   Filed 01/03/2008   Page 5 of 6

30. As a direct and proximate result of AW's failure and refusal to pay the sums due Greenwich as holder of the indebtedness, Greenwich has sustained damages in excess of $129,861.83.

31. Greenwich is entitled to an award of attorney's fees, court costs and expenses incurred in this action, pursuant to the terms of the AW Guaranty.

32. Greenwich has performed the terms and conditions of the AW Guaranty.

WHEREFORE, Plaintiff, Greenwich Investors XXIV, LLC moves that this Court enter judgment in its favor and against A and W Inc., for $129,861.83 together with interest thereon from and after November 9, 2007 through the date of judgment, plus Greenwich Investors XXIV, LLC's attorney's fees and court costs in this action.

## COUNT III – BREACH OF GUARANTY - ENTERPRISE

33-41 Greenwich restates paragraphs 8 through 16 of Count I as paragraphs 33 through 41 of Count III, as though fully set forth herein.

42. Contemporaneously with the making of the Note and as a material inducement to The Northern to extend credit and make the subject loan to Borrowers, Enterprise as guarantor, executed a Commercial Guaranty (the "Enterprise Guaranty") in favor of the Northern dated March 17, 2003 personally guaranteeing repayment of the indebtedness evidenced by the Note. A copy of the Enterprise Guaranty is attached and incorporated herein as Exhibit E.

43. Enterprise's obligations as guarantor run to and for the benefit of Greenwich as the Enterprise Guaranty provides that it inures to the benefit of successors and assigns of The Northern, and includes all indebtedness of the Borrowers under the Note "together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note."

44. On May 2, 2007, The Northern assigned the Enterprise Guaranty to Greenwich.

5

45. Despite repeated demands, Enterprise has refused and otherwise failed to pay the amounts due Greenwich as alleged above, and has thereby breached its obligations under the Enterprise Guaranty.

46. As a direct and proximate result of Enterprise's failure and refusal to pay the sums due Greenwich as holder of the indebtedness, Greenwich has sustained damages in excess of $129,861.83.

47. Greenwich is entitled to an award of attorney's fees, court costs and expenses incurred in this action, pursuant to the terms of the Enterprise Guaranty.

48. Greenwich has performed the terms and conditions of the Enterprise Guaranty.

WHEREFORE, Plaintiff, Greenwich Investors XXIV, LLC moves that this Court enter judgment in its favor and against Enterprise Industries, Inc. for $129,861.83 together with interest thereon from and after November 9, 2007 through the date of judgment, plus Greenwich Investors XXIV, LLC's attorney's fees and court costs in this action.

GREENWICH INVESTORS XXIV, LLC

By: s/Jason D. Altman
    One of its attorneys

Jason D. Altman (ARDC# 6224378)
Kluever & Platt, LLC
65 East Wacker Place, Suite 2300
Chicago, Illinois 60601
(312) 236-0077

Case 1:07-cv-06466   Document 28-6   Filed 05/15/2008   Page 8 of 18
Case 1:07-cv-06466   Document 15-6   Filed 01/31/2008   Page 8 of 18
Case 1:07-cv-06466   Document 13-2   Filed 01/03/2008   Page 1 of 2

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $340,670.08 | 03-17-2003 | 04-30-2003 | | | | 26317 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Walter Johnson II
Ann L. Domkaitis
275 East Industry Avenue
Frankfort, IL 60423

**Lender:** THE NORTHERN TRUST COMPANY
50 SOUTH LASALLE STREET
CHICAGO, IL 60675

---

**Principal Amount: $340,670.08**     **Interest Rate: 4.250%**     **Date of Note: March 17, 2003**

PROMISE TO PAY. I ("Borrower") jointly and severally promise to pay to THE NORTHERN TRUST COMPANY ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Forty Thousand Six Hundred Seventy & 00/100 Dollars ($340,670.08), together with interest at the rate of 4.250% per annum on the unpaid principal balance from March 17, 2003, until paid in full.

PAYMENT. I will pay this loan in one principal payment of $340,670.08 plus interest on April 30, 2003. This payment due on April 30, 2003, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs and any late charges, then to any unpaid interest, and any remaining amount to principal. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

PREPAYMENT. I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: THE NORTHERN TRUST COMPANY, 50 SOUTH LASALLE STREET, CHICAGO, IL 60675.

LATE CHARGE. If a payment is 10 days or more late, I will be charged 5.000% of the regularly scheduled payment.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note 2 percentage points. The interest rate will not exceed the maximum rate permitted by applicable law.

DEFAULT. I will be in default under this Note if any of the following happen:

  Payment Default. I fail to make any payment when due under this Note.

  Break Other Promises. I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

  False Statements. Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

  Death or Insolvency. Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

  Taking of the Property. Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts, including deposit accounts, with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

  Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

  Cure Provisions. If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

GOVERNING LAW. This Note will be governed by and interpreted in accordance with federal law and the laws of the State of Illinois. This Note has been accepted by Lender in the State of Illinois.

CHOICE OF VENUE. If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of COOK County, State of Illinois.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts.

COLLATERAL. This loan is unsecured.

POWER OF ATTORNEY – FILLING IN BLANKS, ETC. Lender is hereby authorized by Borrower without notice to Borrower to fill in any blank spaces and dates and strike inapplicable terms herein or in any related document or instrument to conform to the terms of the transaction and/or understanding evidence hereby, for which purpose Lender shall be deemed to have granted an irrevocable power of attorney coupled with an interest.

FORCE MAJEURE. Northern Trust shall not be liable for any loss due to forces beyond its reasonable control, including but not limited to delays, errors, or interruptions in service caused by strikes, work stoppages, acts of war or terrorism, insurrection, revolution, nuclear fusion, fission or radiation, court order, computer malfunction, failure or fluctuation in electrical power, heat, light, air conditioning, or telecommunications equipment, or an act of God.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: THE NORTHERN TRUST COMPANY, 50 SOUTH LASALLE STREET, CHICAGO, IL 60675

GENERAL PROVISIONS. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

EXHIBIT A

Case 1:07-cv-06466   Document 28-6   Filed 05/15/2008   Page 9 of 18
Case 1:07-cv-06466   Document 15-6   Filed 01/31/2008   Page 9 of 18
Case 1:07-cv-06466   Document 13-2   Filed 01/03/2008   Page 2 of 2

**PROMISSORY NOTE**
**(Continued)**                                                                 Page 2

PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____        X _____
Walter Johnson-II, Individually              Ario L. Domikaitis, Individually

LASER PRO Lending, Ver. 5.18.00.05  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.

# FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT ("**Agreement**") is made as of December 15, 2003 by and among NORTHERN TRUST BANK, an Illinois corporation ("**Northern**") and Walter Johnson II and Ann Domikaitis, individuals ("**J&D**").

J&D borrowed an original sum of $340,670.08 from Northern as evidenced by a Promissory Note ("**Note**") dated March 17, 2003. The principal balance due on the Note as of December 15, 2003 is $190,670.08. The Note requires payment of interest monthly on the 30th day of each month commencing March 30, 2003 and a payment of principal by April 30, 2003. As of December 15, 2003, J&D has not paid the principal payment due April 30, 2003. Additional borrowings on the Note are no longer available.

NOW, THEREFORE, in order to induce Northern to forbear during, and only during, the Forbearance Period -- which matures or ends on **October 31, 2004** -- from the collection of any amounts in respect of the Note and any guarantees thereof, J&D commits to the following:

Pay all interest payments on the Note due on the 30th of each month, commencing December 30, 2003, and at the date when the final principal amount is paid.

Pay principal as follows:

$20,000.00 by the 26th day of December, 2003 (any unpaid amounts must be paid within a 20 day grace period thereafter) and then per the below schedule...

$5,000.00 by each of January 31, 2004, by February 29, 2004 and by March 31, 2004 ($15,000.00 total);

$10,000.00 by each of April 30, 2004 and May 31, 2004 ($20,000.00 total);

$25,000.00 by each of June 30, 2004, July 31, 2004, August 2004 ($75,000.00 total);

All amounts unpaid and outstanding on the Note, including all principal and interest, by maturity of this Agreement on October 31, 2004.

By December 31, 2003, cause a lien to be placed on the real property at 275 East Industry Ave., Frankfort, IL (junior only to the existing approximate $522,000 lien by LaSalle Bank) to be granted to Northern as collateral for the A&W, Inc. and/or Enterprise Industries guarantees of the March 17, 2003 Note, which is subject to this Agreement.

<u>Forbearance</u>. In consideration of the execution and delivery of this Agreement, Northern agrees, subject to the terms and conditions of this Agreement, TO FORBEAR in the exercise of its rights and remedies under the Note.

<u>Non-Waiver</u>. By entering into this Agreement, Northern does not waive any prior default under the Note and, upon any Event of Default hereunder or upon the expiration of the Forbearance Period, Northern may proceed to enforce its rights and remedies because and on account of such existing defaults and any additional defaults. The rights granted to Northern under this Agreement shall be in addition to, and not in substitution of, all of the rights of

EXHIBIT B

Northern under the Note and any guarantees thereof, until expiration of the Forbearance Agreement or any extension of the same.

Events of Default. The occurrence of any one or more of the following events shall constitute an "Event of Default" under this Agreement:

(a) Failure by J&D to make any or all of the scheduled payments when due on the Note.

(b) Failure of J&D to effect collateral pledge (mortgage lien) satisfactory to Northern in a timely manner.

(c) This Agreement, or any provision thereof, is challenged in any court proceeding, including any bankruptcy court proceeding.

Rights and Remedies. Upon any Event of Default hereunder, the Forbearance Period automatically and without notice shall expire, and Northern shall be under no further obligation to forbear from collecting any amount due or exercising any available remedies.

Continuing Agreement. Notwithstanding the expiration or WITNESS WHEREOF, the parties have executed, ensealed, and delivered this Agreement as of the day and year first written above.

Northern Trust Bank, an Illinois corporation

By: _____        _____
Nelson J. Leidner, Jr.                              Walter Johnson II

Its: Vice President                                  _____
                                                    Ann Domikaitis

## ALLONGE

Allonge to that certain Promissory Note dated March 17, 2003 in the face principal amount of U.S. $340,670.08 (whether a note or other document, for convenience, the "Note"), executed by Walter Johnson II and Ann L. Domikaitis, natural persons (individually and collectively, "Borrower"), payable to the order of, or executed in favor of, The Northern Trust Company. The Note is hereby transferred pursuant to the following endorsement with the same force and effect as if such endorsement were set forth at the end of such Note:

> Pay to the order of _____ without recourse, warranty or representation, express or implied, except as set forth in that certain Loan Purchase and Sale Agreement dated May 2, 2007 between Greenwich Investors XXIV, LLC, a Delaware limited liability company, and The Northern Trust Company

This Allonge shall be attached to the original Note described above and is hereby made a part thereof.

Dated _MAY 2_, 2007.

THE NORTHERN TRUST COMPANY
By: _[signature]_
Print Name: _Nelson J. Leidner_
Its: _Vice President_

#278114v1

**EXHIBIT C**

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | 25317 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Walter Johnson II
Ann L. Domikaitis
275 East Industry Avenue
Frankfort, IL 60423

**Lender:** THE NORTHERN TRUST COMPANY
50 SOUTH LASALLE STREET
CHICAGO, IL 60675

**Guarantor:** A & W, Inc
275 East Industry Avenue
Frankfort, IL 60423

**AMOUNT OF GUARANTY.** The amount of this Guaranty is Three Hundred Forty Thousand Six Hundred Seventy & 08/100 Dollars ($340,670.08).

**CONTINUING GUARANTY.** For good and valuable consideration, A & W, Inc ("Guarantor") absolutely and unconditionally guarantees and promises to pay to THE NORTHERN TRUST COMPANY ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of Walter Johnson II and Ann L. Domikaitis ("Borrower"), or either or any of them, to Lender on the terms and conditions set forth in this Guaranty. The obligations of Guarantor under this Guaranty are continuing.

**MAXIMUM LIABILITY.** The maximum liability of Guarantor under this Guaranty shall not exceed at any one time $340,670.08 plus all costs and expenses of (A) enforcement of this Guaranty and (B) collection and sale of any collateral securing this Guaranty.

The above limitation on liability is not a restriction on the amount of the Indebtedness of Borrower to Lender either in the aggregate or at any one time. If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**INDEBTEDNESS GUARANTEED.** The Indebtedness guaranteed by this Guaranty includes any and all of Borrower's indebtedness to Lender and is used in the most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations and debts to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind Guarantor's estate as to Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is

tabbies
EXHIBIT
D

**COMMERCIAL GUARANTY**
(Continued)                                                                Page 2

outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

    **Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

    **Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

    **Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

    **Governing Law.** This Guaranty will be governed by, construed and enforced in accordance with federal law and the laws of the State of Illinois. This Guaranty has been accepted by Lender in the State of Illinois.

    **Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of COOK County, State of Illinois.

    **Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

    **Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Loan Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

    **Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

    **No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

    **Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

    **Borrower.** The word "Borrower" means Walter Johnson II and Ann L. Domikaitis, and all other persons and entities signing the Note in whatever capacity.

    **Guarantor.** The word "Guarantor" means each and every person or entity signing this Guaranty, including without limitation A & W, Inc.

    **Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

    **Indebtedness.** The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

    **Lender.** The word "Lender" means THE NORTHERN TRUST COMPANY, its successors and assigns.

    **Note.** The word "Note" means the promissory note dated March 17, 2003, in the original principal amount of $340,670.08 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

    **Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Case 1:07-cv-06466   Document 28-6   Filed 05/15/2008   Page 15 of 18
Case 1:07-cv-06466   Document 15-6   Filed 01/31/2008   Page 15 of 18
Case 1:07-cv-06466   Document 13-5   Filed 01/03/2008   Page 3 of 3

**COMMERCIAL GUARANTY**
**(Continued)**                                           Page 3

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MARCH 17, 2003.

GUARANTOR:

A & W, INC

By: _____        By: _____
Authorized Signer for A & W, Inc         Authorized Signer for A & W, Inc

LASER PRO Lending, Ver. 5.20.00.03 Copr. Harland Financial Solutions, Inc. 1997, 2003. All Rights Reserved. - IL W:\CFI\LPL\E20.FC TR-14377 PR-91

Case 1:07-cv-06466    Document 28-6    Filed 05/15/2008    Page 16 of 18
Case 1:07-cv-06466    Document 15-6    Filed 01/31/2008    Page 16 of 18
Case 1:07-cv-06466    Document 13-6    Filed 01/03/2008    Page 1 of 3

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | 26317 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Walter Johnson II
Ann L. Domikaitis
275 East Industry Avenue
Frankfort, IL 60423

**Lender:** THE NORTHERN TRUST COMPANY
50 SOUTH LASALLE STREET
CHICAGO, IL 60675

**Guarantor:** Enterprise Industries, Inc.
275 East Industry Avenue
Frankfort, IL 60423

**AMOUNT OF GUARANTY.** The amount of this Guaranty is Three Hundred Forty Thousand Six Hundred Seventy & 08/100 Dollars ($340,670.08).

**CONTINUING GUARANTY.** For good and valuable consideration, Enterprise Industries, Inc. ("Guarantor") absolutely and unconditionally guarantees and promises to pay to THE NORTHERN TRUST COMPANY ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of Walter Johnson II and Ann L. Domikaitis ("Borrower"), or either or any of them, to Lender on the terms and conditions set forth in this Guaranty. The obligations of Guarantor under this Guaranty are continuing.

**MAXIMUM LIABILITY.** The maximum liability of Guarantor under this Guaranty shall not exceed at any one time $340,670.08 plus all costs and expenses of (A) enforcement of this Guaranty and (B) collection and sale of any collateral securing this Guaranty.

The above limitation on liability is not a restriction on the amount of the Indebtedness of Borrower to Lender either in the aggregate or at any one time. If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**INDEBTEDNESS GUARANTEED.** The Indebtedness guaranteed by this Guaranty includes any and all of Borrower's Indebtedness to Lender and is used in the most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations and debts to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of Infancy, insanity, ultra vires, or otherwise.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind Guarantor's estate as to Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is

**EXHIBIT E**

Case 1:07-cv-06466   Document 28-6   Filed 05/15/2008   Page 17 of 18
Case 1:07-cv-06466   Document 15-6   Filed 01/31/2008   Page 17 of 18
Case 1:07-cv-06466   Document 13-6   Filed 01/03/2008   Page 2 of 3

**COMMERCIAL GUARANTY**
(Continued)                                                                                              Page 2

---

outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

  **Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

  **Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

  **Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

  **Governing Law.** This Guaranty will be governed by, construed and enforced in accordance with federal law and the laws of the State of Illinois. This Guaranty has been accepted by Lender in the State of Illinois.

  **Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of COOK County, State of Illinois.

  **Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

  **Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Loan Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

  **Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

  **No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

  **Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

  **Borrower.** The word "Borrower" means Walter Johnson II and Ann L. Domikaitis, and all other persons and entities signing the Note in whatever capacity.

  **Guarantor.** The word "Guarantor" means each and every person or entity signing this Guaranty, including without limitation Enterprise Industries, Inc..

  **Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

  **Indebtedness.** The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

  **Lender.** The word "Lender" means THE NORTHERN TRUST COMPANY, its successors and assigns.

  **Note.** The word "Note" means the promissory note dated March 17, 2003, in the original principal amount of $340,670.08 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

  **Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**COMMERCIAL GUARANTY**
**(Continued)**                                                          Page 3

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MARCH 17, 2003.

GUARANTOR:

ENTERPRISE INDUSTRIES, INC.

By: _____      By: _____
   Authorized Signer for Enterprise Industries, Inc.      Authorized Signer for Enterprise Industries, Inc.

LASER PRO Lending, Ver. 5.13.00.03  Copr. Harland Financial Solutions, Inc. 1997, 2003.  All Rights Reserved.  - IL  W:\LPL\CFI\LPL\E20.FC  TR-14777  PR-01